The case under advisement and our final case of the day is number 21-13212 Margli Gallego v. Ivette Perez and Carlos Luffy. Ms. Zarin, when you are ready, you may proceed. I see that you have reserved three minutes for rebuttal. Ms. Zarin Good morning. May it please the court, my name is Eric Zarin and I represent the two appellants in this case, Miami-Dade police officers, Ivette Perez and Sergeant Carlos Luffy. We are here on the denial of the officer's motion to dismiss, which asserted entitlement to qualified immunity. I would like to bring to the court's attention, as you've clearly noted from the briefs, that there are four officers who were sued by Ms. officers actually answered the second amended complaint. And I bring that to the court's attention to bring to light the fact that the court is obligated under Alcocer v. Mills to evaluate whether each individual officer's actions violated clearly established law on an individual. Mr. Zarin So as I understand it, you're not challenging that there was a lack of cause for whatever happened for the four hours at, at least for our purposes here for appeal, whatever happened at the clubhouse, uh, on the day of the seizure, correct? Ms. Zarin If you mean as, as it pertains to the two officers who haven't appealed for, we are not challenging as a matter of pleading. Of course, we intend to disprove the allegations and, and raise these issues. Mr. Zarin For our purposes, you're not arguing that there was cause for what happened, correct? Ms. Zarin We are not challenging that there was a basis to make a detention as pled in the complaint, second amendment complaint. Mr. Zarin And I, I don't think at this point you're assuming that they've alleged at least a constant, or at least you're assuming that they've alleged a constitutional violation with regard to your officers and you're focusing instead on whether that violation was clearly established. Is that fair? Ms. Zarin What's fair is that we are pursuing on the clearly established prong. Quite frankly, it is an easier way to proceed as the court suggestion may be the case. Supreme court suggested in Pearson v Callahan. Mr. Zarin You haven't really substantively argued that, that there wasn't some participation here. Ms. Zarin No. Mr. Zarin They didn't participate in some way. Ms. Zarin No. We have not made the constitution, the constitutional claim prong argument in the appeal.  Ms. Zarin That is. Mr. Zarin So the, really the only question is, as I see it, is whether it was clearly established that the level of participation that the officers engaged in here was enough, was whether it's instigation or however they frame it, whether as we've said, if it's participation in some way or sufficient participation, um, whatever that is, whether it was clearly established at that time. Is that right or not? Ms. Zarin It's close. We would argue that the, as far as any participation, I wouldn't, I wouldn't say the level of participation. I think we're arguing that there was no participation, but more than... Mr. Zarin I don't see how you can argue that and still argue and still not make a substantive argument on the constitutional violation. In other words, that's inconsistent. There has to be something. And then the question is whether it was clearly established at that time. But I don't think you can say there was nothing, but don't worry about the constitutional violation part because if there was nothing, there'd be no constitutional  Ms. Zarin I think what we're saying is that they were certainly there and they, they were in the clubhouse at various points, but what they did did not amount to participation as the court has framed it, although only once and very significantly in a case that involved an arrest. And so we begin with the proposition that this case... Mr. Zarin Let's, let's back up, counsel. If, again, you can't, you can't have it both ways. Either we assume that there was some participation such that there was a constitutional violation for today's purposes, and all we're arguing is that whether it was clearly established or not, or you need to come out straightforward and say there was no constitutional violation here because there was no participation at all. Ms. Zarin Your Honor, I think, I think that how we litigated this to the district court, we made the argument that there was no constitutional violation. We made the decision on appeal because the Supreme Court advised in Pearson v. Callaghan that there just may be cases where it's easier to look at the second prong, and that's how we're proceeding here today. Mr. Zarin All right. So let's assume for the moment that there's, I believe that there's some participation and that that participation reaches the level of a constitutional violation. Assume that for the moment. Talk to me about the clearly established prong and what, what case you think is out there and why they don't meet under the, our first way of showing clearly established, which is a materially similar case, and then get to the second and third ways, which your opposing counsel argues for whether there's a broad principle or whether the constitutional violation is just clear because, because there is a constitution. Ms. Zarin Well, I'd like to start with a few overarching principles that will guide us. The first principle being that there is no 11th Circuit or Supreme Court opinion dictating what participation means in the context of a Terry stop whatsoever. So there is no case that is like this case that exists in the current circuit. Mr. Zarin I'm sorry. Mr. Zarin Oh, please counsel. Mr. Zarin Isn't, isn't the right at issue here the right to be free from an unlawful seizure? I mean, this isn't, this isn't an excessive force case where we analyze the different, uh, uh, myriad different situations that might, uh, uh, might constitute notices is, uh, isn't the right at issue here, the right to be free from, uh, unlawful seizure in, in a way your honor. But, but Ms. Gallego has not proceeded on appeal as a direct Terry stop set of facts. In other words, she is not claiming that officer Perez or Sergeant Luffy actually conducted the direct detention that eventually took place at the direction of two other officers. She has proceeded and the question is whether they participated or instigated, right? Isn't that a fact question? Once the right, uh, if you have a clearly established, uh, right, isn't that the next step? Ms. Gallego Well, we certainly have, uh, a lot of facts. It took three versions of the complaint and two hearings to get to where we are today. So I would say that these present very novel facts. I'm not the only one to say that the district judge below indicated that these, I know these are certainly novel facts and what this case said in King v. Pridmore is that's a significant finding that when you have a novel, novel facts is the, is the exact word, words that were used in King. Those were the words used in King v. Pridmore. Judge Goldberg My point is I don't see how there's a novel fact with regard to the detention itself, whether that was, uh, lawful and whether it's clearly established. Novel may, may come into play as to whether these officers, your clients participated, uh, in the, in, in the, uh, event. Ms. Gallego Yes. Judge Goldberg The right is clearly established, isn't it? Ms. Gallego Well, we're blending a couple of things. We actually answered on behalf of the officers who detained Ms. Gallego because we assumed for the purposes of the facts that were alleged that there had been a detention that took place. What we're saying is that these facts that are alleged to suggest participation create a factual setting, which is a novel setting and the district court below agreed. Judge Goldberg So counsel, if I can clarify a little bit because I want to, let me say this. I want to piggyback off judge Antunes question. So let's say that there is an arrest at the local coffee shop between officer Smith and Jones, officer Smith and Jones. Everyone agrees conduct the arrest and that arrest is unlawful. I, officer luck happened to be getting a cup of coffee at the coffee stand at that time. I have nothing to do with it. I didn't know what was going on. My back to it was old time. I was, I was drinking my coffee. I am not an arresting officer or liable, correct? Ms. Gallego Correct. Judge Goldberg Because constitutionally, not factually, but constitutionally there has to be some level of participation for an officer to be a non arresting officer to be liable for that seizure, correct? Ms. Gallego Absolutely. Judge Goldberg That's the constitutional claim that they're raising here is that those two officers clearly arrested them. They're the ones that are answered and they're going to litigate and have to answer for it. But there are two other gentlemen that were there at the time who either participated or not. And the question is whether their participation met the constitutional threshold to make them liable for the same arrest, correct? Ms. Gallego You've got it. And we know that for those officers to be liable, whatever they did wrong had to have been so clear to them, had to have crossed a bright line into the zone of unconstitutional conduct for them to be attributed the liability that the directly detaining officers are. Judge Goldberg What role, here we do have Officer Luffy who is a superior officer. And so the allegations that you're facing are that the presence of a superior officer, they're not all equal, that that is indicating that Officer Luffy has in fact participated because of the statements that he was making. Ms. Gallego Well, a couple of responses to that, Your Honor. The first thing is there's not a supervisory liability claim in this case. And that would be the appropriate way to go, I believe, if there was this, the suspicion that Sergeant Luffy was responsible because he directed the conduct of other officers. The other thing I would point out is that the Judge Goldberg Of a counsel, come on, that fact is important. I mean, it's important one way or the other. I don't know if it gets you to where, where your opposing counsel needs to go. But he's the supervisor, he gets there and tells them, we're going to arrest these guys, to these these other off duty guys who are brand new, because they're getting off duty work. He then flashes his cuffs throughout, as this thing is going on. I mean, the implication has to be that he somehow instigated or participated in the conduct to get these guys to do what happened. I mean, that that has to be the inference we draw at this point, isn't it? Ms. Gallego I believe that it's a speculative, something to draw because the communication that took place outside of the clubhouse was, we're going that there was some communication that we're going to arrest Ms. Gallego. She was not arrested that day. That's an important part that's missing from Ms. Gallego's presentation. There wasn't a conversation, hey, get in there. And if I flash my handcuffs, make sure she sits on a chair while you sandwich her. Judge Goldberg To a citizen, when two police officers are sandwiching you in a chair and telling you you can't get up and even use the bathroom. It doesn't really matter whether we call it an arrest. And it's a TGK or whether it's at your clubhouse. It's it is compelled. It is compelled non movement there. So I don't know that it's a formal arrest or not gets us there, but something more than an ordinary Terry stop. Ms. Gallego I don't believe so, Your Honor. I don't think and in fact, this was described in the second amended complaint in the title as an unlawful whether it was or wasn't. Judge Goldberg It's not a typical Terry stop. It's not just to make sure that to pat somebody down and ask a few preliminary questions. It was four and a half hours. Ms. Gallego Your Honor, there have been other cases I one in the district court and below and where a four hour detention was considered an appropriate Terry stop, but we're not challenging that the Terry Judge Goldberg There probably was some articulable suspicion articulated and here there is not. Ms. Gallego But Your Honor, we're not arguing that that Miss Gallego was not detained. What we're saying is that there was no bright principle of law in the hazy land of qualified immunity. There is no bright principle of law that told these Officer Perez say and I would like to quote say something like I can't wait to put you in a chair or you Sergeant Luffy flash your handcuffs. There's nothing bright line out there that suggests that what they were if they did that they would violate Miss Gallego's constitutional rights and I would suggest to you that West Judge Goldberg Why isn't Jones enough? Ms. Gallego Jones is distinguishable on a number of grounds. Judge Goldberg I know I let's say I agree with you factually. Why is the broad principle set out in Jones that that a non arresting officer who sufficiently participates in the arrest is liable with the arresting officer? Why is that a broad principle not applicable? Ms. Gallego I think that's no different than the court's decision in Eccles v. Lawton where they said and if I may quote from that case. An act of retaliation for exercise of constitutional rights is clearly established as a violation is too broadly worded. The Supreme Court has time and time again over the last three or four years wreck reminded district courts that when they've that broad principle that applies to novel facts has to make it absolutely clear to the officers who are potentially going to be subjected to liability that what they're doing is unconstitutional and as a final point, I see my time is up. I would refer your honors to West v. Davis where the conduct that was involved was an alleged statement about you better do what I say at a courthouse or I'll arrest you and indication of the handcuffs and the 11th circuit said those were not acts of seizure and a fair reasonable reading of that by any officer would would lead them to think that they were not violating clearly established law. You've gone past your time. Thank you. So you do have saved you have saved some time for rebuttals. Thank you your honor. Mr. Napoleon. Good morning, your honors. May it please the court. My name is Hilton Napoleon. I have the pleasure of representing Margie Gallego. Magalie Gallego is how you actually pronounce it, your honor. I think that your honors obviously understand the principles involved or the direct issues. I'm going to get to which I'm going to get to because I know Judge Luck would like to get to the meat and the bones of the issue. When qualified immunity is raised, the plaintiff only has to prove two things and in response to their claims qualified immunity. Number one, that there was a constitutional violation that number two that constitutional violation was clearly established. Now the defendants here concede and they concede in their briefs that the complaint alleges a constitutional violation that was clearly established. The fundamental disagreements between the parties is whether or not each particular officer's level of participation must be clearly established as opposed to the totality of the circumstances. Let me ask you a question about that. You are you're arguing that we need to look not only at what happened at the clubhouse, but you have argued in your brief that the history between the appellants and Gallego is relevant. And then there's also a reference to an arrest that's happened after this incident at the clubhouse. But certainly looking at the Supreme Court's Torres case is the appropriate inquiry is that the challenge conduct objectively manifests an intent to restrain subjective motivations of officers do not matter. How can you argue that the history outside of what happened at the clubhouse matters? Well, your honor, I was based on the case of Valdez, where this court affirmed the magistrate's ruling in a particular case where they were talking about the history between the parties. But even if we put that aside for a second, even if we put well, let's go back to Valdez for a second. So I know that the I'm concerned about your portrayal of Valdez. You're citing a district court's order on a motion to dismiss that we later affirmed an unpublished opinion. So neither the district court opinion or the unpublished opinion is binding. And also the language that you're citing to your to you citing to in your brief, you're making it seem like that language was affirmed by this court. But that quoted language didn't come from the order that you're citing. Instead, it came from a later order, which was never reviewed on appeal. And I think the district court had expressed some concern about how you're treating Valdez. So I would just advise you to proceed with caution on Valdez. But you can and you can certainly address my concerns if you would like. So I'll address your concerns as far as the history between the parties, even if we put that aside for let's forget about what happened before. Let's forget about all the allegations. I only brought that up to go to how an objective person would actually look at this when they have two police officers show up to an election who are not supposed to be there. They barge in. They stay there anyway. They flash their handcuffs. I only mention that to talk about the history between the parties. But aside from that, I think that the fundamental issue here is whether or not an officer's level of participation goes to prong one of the qualified immunity analysis or whether it goes to prong two, meaning in this particular circumstances, does the causal connection that all the cases that we refer to relate to prong one? We believe that it does. Because the question is, does the officer's level of participation cause or did it instigate a constitutional violation? That's what the thing. First of all, it's great to see you, Mr. It's very good to see you, too. The issue is, though, is where are you in the constitutional hot potato? In other words, if I go back to my hypothetical, right, I'm there. Right. An illegal arrest happens. There's no dispute. Right. I am not in the constitutional hot potato because I didn't do anything. But at some point, the level of participation puts me there. And it seems to me that that is both a constitutional violation question, in other words, on element one. And it seems to me it would have to be a clearly established question. In other words, I have to know what level of participation I need to have in order to know when I violate the Constitution. Is that wrong? Am I wrong? I respectfully disagree. Why? I believe because you're actually adding a level to the already highly complicated qualified immunity issue. If you're adding another prong, which requires a person to show that an officer's level of participation is clearly established, then there's going to be a lot of. I guess what I'm saying is I think that's always there, but it's never an issue in an arrest case. In other words, the normal case, as you know, there's an unlawful stop. Right. Officer Jones does the stop. Right. Officer Jones goes too far and either uses excessive force or arrest someone when there was no cause to arrest them. Right. There's no issue of participation there. There's only one officer. Right. But in some circumstances, and Jones, I think, is the best case. Wilkinson talks about it a little bit. There are situations where there are multiple people on scene, but only some of them are responsible for the constitutional violation of the seizure. And some are not responsible because they didn't participate in any meaningful way. Like in Wilkinson, the guy showed up after the whole thing happened. Right. So how's he responsible for what happened? I 100% agree with you on it. So I guess what I'm saying is, doesn't that have to be part of both the constitutional inquiry of how much? Everyone agrees there's a seizure. Everyone agrees it's unlawful. That's not a question. Right. Everyone agrees that the two officers who were the sandwich. Right. They're in the hot potato. But the people on the periphery, they have to know not only whether they violate the constitution, but have to know whether that's clearly established such that they can modify their conduct in that way. And that seems to be what we have to ask, is it not? I understand that that's what you have to ask. Only thing I can tell you is that every single case that came from this court, whether it was Brown, whether it was Wilkinson, none of those cases actually required that particular analysis as to prong to a clearly. But the problem is Jones is a is a prong one, not a prong to case. Jones only talks about whether there's a violation or not. Wilkinson to decides it on. That's really a failure to intervene case that the officer didn't didn't have an obligation to intervene. None of them have have. We're the first. None of them have been in our position to say everyone sort of agreeing on prong one. Right. You have to ask prong to. I just don't see why the inquiry would be any different. I'm I'm having trouble understanding why. No, but but just that's exactly my point. That's basically expanding the already complicated qualified immunity analysis, because now if you're going to prong to and saying there's an additional requirement for in these particular situations to determine whether or not the law was clearly established as to each particular officer, I believe that you're adding a requirement to the qualify. Haven't we already said that? In other words, we've already said that each officer has to be analyzed individually. I mean, we we do summary reversals all the time in district court orders where they just sort of lump everyone together. Right. And we say, you can't do that. Go back. We don't even bother. Go back district court and you tell us Officer A's liability, Officer B's liability, Officer C. But my point is, Judge, and I don't mean to bicker if I'm wrong, then I'll move on. Please bicker. That's why you're here. I appreciate that. So what I'm what I'm saying is that every single case that analysis has to go to prong one. It has to go to prong one because you're making a factual determination as to whether or not the officer's participation rose to the level of a constitutional violation or really contributed to a constitutional violation that we have already agreed that it's been clearly established. So if the constitutional violation is clearly established, really, we're talking about which particular officer's level of participation is sufficient for prong one. But just because those cases were decided at prong one, there's nothing in those cases that says when we're talking about level of participation, we we need go no further. That's just where that was an it was easier in those cases, perhaps, to deal with the constitutional question. We can we can pick either one. And I agree with you that all of the cases that we have cited to all of the cases that I reviewed have all gone to the prong one requirement. I'm not saying that you can't I don't believe that you can go to prong two, because if you do that, I believe that you're expanding qualified immunity. And I don't think that this court should do that in this particular case. And I'll give you a policy reason why. Because if you most qualified immunity and most Fourth Amendment seizure cases really come up in the context of a criminal case, whether or not the officer had probable cause to arrest, most judges or most courts don't really go through a qualified immunity analysis when they're determining whether or not a constitutional violation occurred. So if you go basically to prong two, you're requiring the clearly established law to basically be expanded or requiring judges to expand it on an issue that's not necessarily even before a criminal court or in a public court. Can you explain to me what you mean by in this case that if we were to move directly to clearly established prong, why that is an expansion of qualified immunity? I'm not I guess I'm not following that leap that if we were to look at the it was it clearly established for these officers that that what they did on scene rose to the level of participation that's necessary to trigger liability. Why is that an expansion of qualified immunity? Why is not that just a normal qualified immunity analysis that happens to be this under the facts of this case? Well, judge, because I think that we can all agree none of us have actually seen that case. And I don't think the Supreme Court has decided a case to set that you can determine whether or not prong two, i.e. clearly established law is is is relevant to each particular officer's actions. We would literally be splitting hairs in every single case if we were to go to that to expand it that far. And so my concern is I think that is our law, at least our law. I'm not sure the Supreme Court has said it exactly like that. But I think we have. I mean, I I think we've said that we have to determine the qualified immunity analysis officer by officer. And I agree. And I think we do split those hairs. I mean, this is what you do. I know you know this. I mean, we do split hairs between this officer did this at this point versus that one who did that at that point. I agree with you, Judge. But what my point is that when you split the hairs, you split the hairs on prong one, i.e. that the officer's actions rise to the level of contributing to the constitutional violation. OK, let's let's assume that I think we do need to decide this at at prong two. And I understand your point. What is so the district court relied on broadly established principles. You also argue a broadly established principle to establish clearly established law. Judge, I don't think that I actually did. I think that it was conceded at the point in the district court. I think that what they basically decided to argue is that in this particular case, they're stipulating that, number one, there was a constitutional violation and also, number two, that the constitutional violation was clearly established. The only thing that they argued, from my recollection, is that these officers did not sufficiently participate in the constitutional violation. Now, I know on appeal that they're now claiming that these particular circumstances, you have to go to a prong to analysis. This is from the district court's order. She didn't write an individual order, but she did give her reasons at the hearing. I'm referring to docket entry 72, page 36 of the transcript. Let me say with regard to the right at issue, it's clear to the court that the two cases, Jones versus Cannon and Jordan versus Mosley are published 11 circuit cases. And both cases are very clear that a participant in an arrest, even if not an arresting officer, may be liable if the officer knew that the arrest lacked any constitutional basis and participated in some way. That seems to be the broadly established principle that the district court relied on in making the prong to analysis. Am I wrong on that? Am I reading that wrong? No, you're not reading it wrong, Your Honor. But my only point is that that was a concession by their side, that there was a violation of clearly established law by the two officers who sandwiched. There's no doubt about that. But they're not, again, the key to that quote that I just read to you is the non-arresting officer part. And that's really what we're talking about here. There seems to be a distinction in the case law. Jones is the best case that sets this out between the person who is the clear arresting officer, and again, I'll go back to my coffee example, the two people who are clearly putting the handcuffs on and taking the guy into custody versus someone else on scene who maybe did something to, as you point out, instigate, cause, contribute in some way to that arrest. There's a difference between those people, isn't there? Absolutely, there's a difference between those two people. So for liability purposes, there is a difference between those people. And I guess what I'm asking is, assume with me that I agree that I think it's a phase two or prong two thing. What either materially similar case, broad principle of law, or constitutional provision dictates with obvious clarity to all reasonable officers that they violated the Constitution? Your Honor, as far as the prong two and assuming that you believe the prong two analysis, I don't think that there's a particular case that is on point. I'll concede that. I don't think that that has been decided. But I do think that an officer who, I think that it's a broad principle or an officer, the real question is, would the officer or did the officer know what he was doing was wrong? That's really the overarching principle. And I think that it's clear that these officers who walked in there, clearly had some type of animus with Ms. Gallego. They walked into the clubhouse. They directed officers to do certain things. I think that they would, I think it would be clearly established at that point that they knew what they were doing was wrong. They knew that they didn't have probable cause. So the, I think I understand that, you know, there's a difference between broad principles and I know that we want to, the Supreme Court has cautioned us to narrow the issues. And I fully understand that. But I do think that there are a lot of cases that point to that in this complicated sphere of qualified immunity analysis. And you said that they directed the other officers. I'm assuming you're arguing implicitly that their actions. Implicitly, correct. They didn't say, well, I mean, listen, they said that they were going to arrest her. They walked in. But they didn't, I'm asking specifically what direction did Ms. Perez and Luffy provide to the two sandwiching officers? Well, I think the direction, it's not, let me clarify. Okay. I don't think that there's a direct direction to go and arrest, you know, go her, sandwich her. If that was the case, I don't think we would actually be here. But as far as their level of participation, what did they particularly do, it's an object, we're going to arrest her. That's what they told Garcia and Escobar. They were in a place they had no right to be. They were told to leave. They refused. They confronted her about something that she said. She said he can't wait to put in handcuffs. They kept flashing the handcuffs. I think that that's a direct level of proof. I don't recall, did Sergeant Luffy and Officer Perez, I'm sorry, did Officer Garcia hear the comment that I think it was Officer Perez made? I can't wait to get you in a chair and question you. Yes, that is actually in the complaint. And that he actually heard it. And he was standing there during the entire conversation. Even when they were actually told to leave, the two arresting officers, Garcia and Escobar, were present during this entire conversation. And they could hear everything. All right. Thank you, Counsel. Thank you. I appreciate it, Your Honor. Nice to see you, Judge. Ms. Zarin, you have three minutes left. Thank you, Your Honor. The issue that we're having in the presentation by Ms. Gallego's counsel and that the district court, frankly, found itself in was collapsing the clearly established prong, finding that a constitutional violation, enough was stated, and then summarily saying that the law was clearly established. I don't think that's right, Counsel. I think the district judge made an honest assessment that she believed that there was a broad principle of law. Now, whether that could establish it with the obvious clarity needed is really our legal question we have to decide. But to me, I read her order as not collapsing the inquiry. I think she understood her job, did her best to do it, and read the case law. She even cited the cases to believe that it established a broad principle. So I guess my question is, why doesn't it establish a broad principle? Well, Your Honor, as I said earlier, there's the idea of simply saying that a detention without reasonable suspicion is unlawful is the argument made in the answer brief. That is a broad principle similar to other broad principles of law. Excessive force violates the Constitution, being another one, that this court has said in Corbett v. Vickers and a number of other cases doesn't fit the bill. The Eccles v. Lawton case is very, very helpful in this regard because in that case, a prisoner who was later freed on DNA evidence pursued a claims bill in the legislature. And the district attorney involved got involved and lied and told the legislature he was still under indictment. The convicted, the now free individual, sued under 1983 and said that violated his First Amendment rights. And the issue, the court determined that that was really bad and it was a violation of the Constitution. But because there was nothing out there that alerted that district attorney that what he was doing, defaming someone in a public manner like that. He had all the benefit of the official conduct and all of that, but he, it was proven to be a false statement that that individual had qualified immunity on the, because there was no broad principle of law. It was too broadly stated and it wasn't obviously clear that what he was doing was wrong. In Wilkerson describing Jones, we said that, quote, a participant in arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way. Why is that not a broad principle of law? Well, I would point out that Wilkerson distinguished Jones, found qualified immunity existed and distinguished Jones, saying that the non-arresting officer... I know what Wilkerson did. Answer my question. Why is it not a broad principle of law? Because I believe that when it was interpreting that broad principle of law, it included that the officers were fully aware of what was going on at the time. We don't have... I just read to you, that's what it described Jones as holding. That's the broad principle of law. Why is that not a broad principle of law that applies here? It is too broad, particularly since it does not indicate in the completely distinct concept of a Terry stop. What is participation? The events that transpired in Jones involved a custodial arrest, a confession that was never made, where both officers participated in the interrogation. One took custody and delivered. It couldn't be farther afield from what is alleged here. And so if that's where the broad principle comes from, how are we supposed to understand the principle without at least looking at what the underlying facts are? If I may just raise one additional point. You have exceeded your time, but thank you. We have your case under advisement and the court is in recess for the day.